**IN THE COURT OF APPEALS OF IOWA**

No. 24-0996
Filed October 2, 2024

**IN THE INTEREST OF A.W.,**
**Minor Child,**

**S.B., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Chickasaw County, Linnea M.N. Nicol, Judge.

A mother appeals the district court's adjudication that her daughter is a child in need of assistance. **AFFIRMED.**

Christopher F. O'Donohoe of Elwood, O'Donohoe, Braun & White, LLP, New Hampton, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Kimberly S. Lange of Waterloo Juvenile Public Defender's Office, Waterloo, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

A mother appeals the district court's adjudication that her daughter is a child in need of assistance as defined in Iowa Code sections 232.96A(2), (3)(b), and (4) (2024). The mother argues that insufficient evidence supported the adjudication, her witnesses were more credible than the children, the district court considered impermissible hearsay, and the district court relied on "ex parte evidence." We affirm.

## I. Background Facts and Proceedings

The daughter was born in 2010 and has lived with her father since she was removed from her mother's custody by court order following an investigation by the Iowa Department of Health and Human Services (HHS). HHS had initial contact with the family in early January 2024. HHS investigated a report by the daughter that her stepfather had sexually abused her.

The daughter reported that, over the past several years, her stepfather had touched her breasts, buttocks, and vagina on multiple occasions, and that he continued to give her smacks on the buttocks and unwanted hugs after she told him "no." She also reported that he had forced her to perform oral sex on him and that she had informed her mother of the stepfather's abuse about two years ago. The mother did not address the allegations, did not contact law enforcement or HHS, and told the daughter and her sibling not to tell anyone.

The daughter told the mother that the mother's behavior made her feel that the mother was choosing to protect the stepfather over her. In emails, she told the mother, "I don't understand how you can do this to your daughter how you can hurt me like this" and "you pick [the stepfather] over me." Shane Sievers, the HHS case

worker, testified that he found the daughter to be more credible than the mother and stepfather based on the corroborating evidence.

Also in January 2024, Sievers interviewed the daughter's sixteen-year-old brother, who when asked if there was anything he wished to share with Sievers, stated "[the stepfather] touching my sister." The brother explained that the stepfather would give the daughter random hugs, she would tell him to stop, he would not stop, and that the brother "would see him slap her on the butt all the time," which the brother last observed in December 2023, about two weeks before the brother's interview with Sievers. This report is consistent with the daughter's recollection of when the stepfather last slapped her buttocks. The brother told Sievers that he reported this behavior to his mother and that she told the him not to tell the father.

Chickasaw County Sheriff's Deputy Gansen also interviewed the brother later that month. The brother told Gansen that the daughter had told him the week before that the stepfather had been touching her sexually, including on family camping trips. The brother stated that the daughter often slept with the stepfather on those trips because the camper was loaded with more people than beds. The brother stated that he always believed this was a bad idea because the stepfather is usually drunk. He expressed that the stepfather's behavior had always made him and others present uncomfortable but that he had not known the extent of the stepfather's actions until the daughter told him. He stated that it all made sense in retrospect. The brother believes that the stepfather always made efforts to keep the daughter happy and attributes this to the stepfather's efforts to keep her from talking by giving her what she wants.

In her HHS interview, the daughter reported that one time the stepfather had shoved his hands down her pants and touched her vagina while she was sleeping with him in the camper bed. She asserted that he was drunk at that time. And she expressed that on multiple occasions he has reached down her pants to touch her vagina while also touching her breasts or otherwise fondling her. She also reported that the stepfather had made her put her mouth on his penis when she was in fifth grade and that he ejaculated into her mouth.

Accordingly, HHS determined the daughter was in imminent danger and needed to be removed from her mother's custody based on the stepfather's sexual abuse and mother's failure to take action in response to that sexual abuse. An order for temporary removal was entered on January 16, 2024. The daughter was adjudicated as a child in need of assistance (CINA) on May 22, 2024, and the disposition order was entered on June 4, 2024. The daughter has been temporarily placed with her father under supervision of HHS. The mother now appeals.

## II. Standard of Review

CINA proceedings are reviewed de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "[W]e are not bound by the juvenile court's fact findings; however, we do give them weight. Our primary concern is the children's best interests." *Id.* (citation omitted). "CINA determinations must be based upon clear and convincing evidence." *Id.* at 41. We ask whether there are "serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (cleaned up).

Subsidiary rulings in CINA cases, including questions related to the admission of evidence, are reviewed for an abuse of discretion. *In re L.R.,* No. 13-0713, 2013 WL 4504930, at *6 (Iowa Ct. App. Aug. 21, 2013).

### III. Discussion

CINA proceedings are governed by Iowa Code chapter 232. We find the meaning of chapter 232 in its words. *See Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) (noting "in questions of statutory interpretation, '[w]e do not inquire what the legislature meant; we ask only what the statute means'" and "[t]his is necessarily a textual inquiry as only the text of a piece of legislation is enacted into law" (citation omitted) (first alteration in original)).

In section 232.2, the legislature defined "child in need of assistance" or CINA. For a child to be adjudicated CINA, the child must be unmarried and affected by one or more of the situations described in section 232.96A. *See* Iowa Code § 232.2(6). Here, the mother appeals the daughter's CINA adjudications under section 232.96A, paragraphs (2), (3)(a), (3)(b), and (4).

"If the court concludes that facts sufficient to sustain the petition have been established by clear and convincing evidence and that its aid is required, the court may enter an order adjudicating the child to be a child in need of assistance." *Id.* § 232.96(9). Physical abuse "means any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent." *Id.* § 232.2(48).

A child is in need of assistance pursuant to Iowa Code section 232.96A(2) when his or her "parent, guardian, other custodian, or other member of the household in which the child resides has physically abused or neglected the child, or is imminently likely to physically abuse or neglect the child."

A child is in need of assistance pursuant to Iowa Code section 232.96A(3)(a) when he or she "has suffered or is imminently likely to suffer harmful effects as a result" of "[m]ental injury caused by the acts of the child's parent." "'Mental injury' means a nonorganic injury to a child's intellectual or psychological capacity as evidenced by an observable and substantial impairment in the child's ability to function within the child's normal range of performance and behavior, considering the child's cultural origin." *Id.* § 232.2(39).

A child is in need of assistance pursuant to Iowa Code section 232.96A(3)(b) when he or she "has suffered or is imminently likely to suffer harmful effects as a result" of the "failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child." Harmful effects are defined broadly and can be established "when there was harm to a child's physical, mental, or social well-being or such harm was imminently likely to occur." *J.S.*, 846 N.W.2d at 41–42.

A child is in need of assistance pursuant to Iowa Code section 232.96A(4) if he or she "has been, or is imminently likely to be, sexually abused by the child's parent, guardian, custodian, or other member of the household in which the child resides."

The mother contends that the district court erred by making credibility determinations as to the daughter and brother's statements from the Child Protective Assessment (CPA) because neither sibling testified and their statements were not testified to by a person who was present when those statements were made. She also argues that the brother's statements to Deputy

Gansen were double hearsay and that it was error for the district court to make credibility determinations as to those statements. The mother works around the error preservation issue of having not objected to admission of the statements at trial by attacking the *weight* the district court gave those statements rather than attacking *admission* of the statements.

The mother also argues that there was insufficient evidence to find that the daughter was sexually abused on the camping trip. She asserts that she provided three witnesses who disputed the daughter's statements in the CPA. This is, in essence, not a sufficiency argument but another weight-of-the-evidence argument based on witness credibility, and we will address it alongside her other credibility claims. Appellate courts are to give substantial weight to the district court's findings of witness credibility. *See In re D.S.,* 856 N.W.2d 348, 351 (Iowa 2014).

CPAs are admissible at adjudicatory hearings pursuant to Iowa Code section 232.96(6). The district court found that the CPA was credible because the siblings' statements were consistent with each other:

> The Court believes [the daughter] is credible because she has reported the same facts repeatedly to a number of professionals. [The brother] confirms the details and that he spoke to [the mother] about those details. [The brother] can look back and see that after the incident where [the stepfather] put his hands down [the daughter]'s pants and touched her vagina, [the daughter] refused to be alone with [the stepfather]. [The brother's] confirmation of [the daughter]'s report happened January 3 and January 4, 2024, before the family marshalled their family members and resources against [the daughter]. [The brother] appeared on both witness lists. [The brother] is in the horrible position of being forced by his mother to choose sides.

The mother argues that she was not given the "opportunity to adequately test the veracity of the statements contained within" the CPA. But she did have that

opportunity even if not through cross-examination of the siblings, who did not testify. Section 232.96(6) provides that "[t]he circumstances of the making of the report . . . including the maker's lack of personal knowledge, may be proved to affect its weight." The mother cross-examined each of the State's witnesses, including Sievers, and called seven of her own witnesses.

Additionally, to discredit the daughter's statements in the CPA, the mother herself relied on hearsay by calling witnesses that testified about out-of-court statements the daughter made to them. The mother would like to have it both ways—she asks the court to discount hearsay that hurts her but to favor hearsay that supports her. And our court has affirmed CINA adjudications where the evidence supporting such an adjudication was based on an HHS worker's testimony. *See In re D.S.*, No. 14-2021, 2015 WL 800084, at *1 (Iowa. Ct. App. Feb. 25, 2015) ("[T]he mother is incorrect in asserting the [CPA] was the sole basis for the adjudication. As explained, the district court also relied on the [HHS] employee's testimony in adjudicating the child in need of assistance. While this testimony was based on hearsay evidence, the mother concedes hearsay is admissible.").

And the mother does not challenge admission of Sievers's testimony relating to statements made by the brother to Deputy Gansen. She states that "the error alleged relates not to admissibility itself but rather the weight of the evidence given to it by the trial court." Her sole argument on this point is that she was not given opportunity to test the veracity of those statements. Yet the mother's attorney did cross examine Sievers and asked him about the information he had

received from Deputy Gansen. She took the opportunity to discredit Sievers and the district court did not find it compelling.

The mother also points to the testimony of three of her witnesses to support her contention that those witnesses' testimony outweighs any evidence brought forward that the daughter was sexually abused on the camping trip. But the daughter had previously reported being sexually abused to her mother and aunt. It was thus reasonable not to find the testimony of the mother or the aunt credible in light of those prior reports. Combined with the consistency of the daughter and brother's corroborating statements, it was reasonable for the district court to attach more weight to the CPA than to the mother's witnesses.

Lastly, the mother argued that the district court erred in relying on "ex parte evidence." She argues that the evidence introduced by the State that the daughter had been abused on the camping trip was ex parte, but it is unclear how far she is arguing the evidence is ex parte. "Ex parte evidence" is an anachronistic term that has not been used by Iowa courts since 1869. *See Allen v. Rogers*, 27 Iowa 106, 106 (1869). She states that the State was permitted "to introduce evidence on an ex parte basis without any real opportunity to test its veracity," which suggests that the evidence related to sexual abuse during the camping trip was ex parte because she was not permitted to contradict that evidence at any point. But she admits to having directly attacked this evidence through witness testimony. And she fails to cite authority sufficiently supporting this issue. We deem that she has waived this issue. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Similarly, we deem any

potential confrontation claim to be waived based the mother's one passing reference to such a claim in an issue heading.

Accordingly, we cannot say that "serious or substantial doubts as to the correctness of conclusions of law" can be raised from the evidence presented to the district court. *L.H.*, 904 N.W.2d at 149 (cleaned up). The evidence presented by the State was clear and convincing. We affirm.

**AFFIRMED.**